**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

_____

)
ELB SERVICES, LLC,                              )
                                                )
                            Plaintiff,          )        No. 24-529
                                                )
            v.                                  )        Filed: July 1, 2024
                                                )
THE UNITED STATES,                              )        Re-issued: July 12, 2024*
                                                )
                            Defendant.          )
_____)

## OPINION AND ORDER

In this post-award bid protest, Plaintiff ELB Services LLC ("ELBS") contends that the

United States Small Business Administration's ("SBA") Office of Hearings and Appeals ("OHA")

improperly determined that ELBS does not meet the status requirements of a Service-Disabled

Veteran Owned Small Business ("SDVOSB") for award of the United States Air Force's Mission

Planning Support Contract IV.  Specifically, ELBS alleges that OHA's decision was arbitrary,

capricious, and contrary to law because OHA: (1) incorrectly interpreted or applied 13 C.F.R. §

128.402(c)(7) when reviewing ELBS's Joint Venture Operating Agreement ("JVOA") and

Addendum; (2) contravened the earlier Size Determination by SBA's Area III, Office of

Government Contracting ("Area Office"), which found that ELBS's JVOA and Addendum

satisfies a similar regulation; and (3) failed to follow its regulation when denying ELBS's Motion

to Dismiss the status protests.  In a separate motion, Plaintiff requests that the Court either complete

---

* The Court issued this opinion under seal on July 1, 2024, and directed the parties to file
any proposed redactions by July 9, 2024.  The opinion issued today incorporates the redactions
jointly proposed by the parties.  Upon review, the Court finds that the material identified warrants
protection from public disclosure, as provided in the applicable Protective Order (ECF No. 10).
Redacted material is represented by bracketed ellipses "[. . . ]."

or supplement the administrative record with the full record of the Area Office's Size Determination.

As explained below, the Court **DENIES** Plaintiff's Motion to Complete, Or In the Alternative, to Supplement the Administrative Record.  Because it finds that OHA misapplied 13 C.F.R. § 128.402(c)(7) and failed to address relevant evidence, it remands the matter to OHA to reconsider its decision consistent with this opinion.  Accordingly, the Court **DENIES IN PART** and **GRANTS IN PART** Plaintiff's Motion for Judgment on the Administrative Record and **DENIES** the Government's Cross-Motion.

## I.   BACKGROUND

### A.   Statutory and Regulatory Background

As it relates to federal procurement contracts, the SBA Administrator is responsible for certifying and verifying "an individual's status as a veteran or service-disabled veteran," "the status of a business concern as a small business concern," and "the ownership and control of such business concern."  15 U.S.C. § 657f(f)(2)(B); *id.* § 657f(b).  Under its rulemaking authority, the SBA has authorized small businesses (as protégés) to form joint ventures with mentor organizations (including other than small businesses) to compete for any type of small business contract, so long as the protégé qualifies for the procurement.  13 C.F.R. § 125.9(d); *Palladian Partners, Inc. v. United States*, 783 F.3d 1243, 1247 (Fed. Cir. 2015) (recognizing SBA's authority to carry out the policies of the Small Business Act, 15 U.S.C. §§ 631, *et seq.*).  Qualification requires that the joint venture be both the appropriate size and, if applicable, status.  *See id.* §§ 125.8 (joint venture size requirements), 128.402 (joint venture VOSB and SDVOSB status requirements).

Section 128.402 of the applicable regulations sets forth the requirements for a joint venture to submit an offer on a veteran-owned small business ("VOSB") or SDVOSB contract. *Id.* § 128.402(a) ("A certified VOSB or SDVOSB may enter into a joint venture agreement with one or more other small business concerns, or an approved mentor authorized by § 125.9 of this chapter, for the purpose of submitting an offer for a VOSB or SDVOSB contract."). This section includes specific requirements for the contents of the joint venture agreement to perform the contract. *See id.* § 128.402(c). At issue here is the requirement of the joint venture agreement to describe the "responsibilities of the [joint venture] parties with regard to negotiation of the contract, source of labor, and contract performance." *Id.* § 128.402(c)(7). This provision requires a joint venture agreement to contain information:

> Specifying the responsibilities of the parties with regard to negotiation of the contract, source of labor, and contract performance, including ways that the parties to the joint venture will ensure that the joint venture and the certified VOSB or SDVOSB partner(s) to the joint venture will meet the limitations on subcontracting requirements set forth in paragraph (d) of this section, where practical. If a contract is indefinite in nature, such as an indefinite quantity contract or a multiple award contract where the level of effort or scope of work is not known, the joint venture must provide a general description of the anticipated responsibilities of the parties with regard to negotiation of the contract, source of labor, and contract performance, not including the ways that the parties to the joint venture will ensure that the joint venture and the certified VOSB or SDVOSB partner(s) to the joint venture will meet the limitations on subcontracting requirements set forth in paragraph (d) of this section, or in the alternative, specify how the parties to the joint venture will define such responsibilities once a definite scope of work is made publicly available[.]

*Id.* An almost identically worded regulation provides the same requirement for joint venture agreements where the joint venture is seeking to perform a contract set aside for small businesses. *Compare* 13 C.F.R. § 125.8(b)(2), *with* 13 C.F.R. § 128.402(c).

Interested parties may challenge the SDVOSB status of a contract awardee, including a joint venture who submitted an offer under § 128.402, in a protest before OHA. *See id.* §§ 134.1001(a), 134.1002, 134.1003(d). Under 13 C.F.R. § 134.1005, the protest filing must include:

> Specific allegations supported by credible evidence that the concern (or joint venture) does not meet the VOSB or SDVOSB eligibility requirements listed in part 128 of this chapter. A protest merely asserting that the protested concern is not an eligible VOSB or SDVOSB, without setting forth specific facts or allegations, is insufficient[.]

*Id.* § 134.1005(a)(2). A respondent may file a motion to dismiss the protest. *Id.* § 134.211(e). If the OHA judge "determines that the protest is premature, untimely, nonspecific, or is based on non-protestable allegations, the Judge will dismiss the protest . . . ." *Id.* § 134.1007(b) ("The dismissal is a final agency action.").

Separate from a status protest, certain parties may also challenge whether a business entity is small and, thus, eligible for federal contracts set aside for small business concerns. *Id.* § 121.1001. Such party must file its size protest with the responsible SBA area office. *Id.* §§ 121.1002–1003. An area office's formal size determination may be appealed to OHA. *See id.* § 121.1101(a). If not appealed, the area office's size determination is "the final decision of the agency." *Id.*

## B.     The Solicitation

On June 6, 2022, the Air Force issued solicitation number FA8217-22-R-0001 ("Solicitation"), which is a 100% set-aside for SDVOSBs. Admin. R. ("AR") at 415, ECF No. 17-2.[1] The purpose of the Solicitation is to award an indefinite delivery/indefinite quantity ("IDIQ") contract for personnel support for the Air Force's Mission Planning Environments ("MPEs") and

---

[1] For ease of reference, the citations to the administrative record refer to the bates-labeled page numbers rather than the ECF page numbers.

future Joint Mission Planning System Open Mission Systems environments.  AR 94, 417.  The Solicitation's Performance Work Statement ("PWS") describes the services required by the contract as follows:

> [C]onfiguration management and control, drafting and publishing of technical documentation, system checkout, fielding, supply, maintenance, supplemental training, customer assistance visits, a twenty-four (24) hour/seven (7) day-a-week helpline, international sustainment and product familiarization, combined test force support, Mission Planning Center (MPC) sustainment and management, deployment and management of System Support Representatives (SSRs) to worldwide locations, transition to follow-on MPEs, and sustainment support of all wing/unit level mission planning requirements and related efforts.

AR 94.  The PWS goes on to detail various requirements covering 12 categories, including requirements for Mission Planning End-user Support, SSRs, and Subject Matter Expertise.  AR 96–128.  On July 14, 2022, the Air Force issued an amendment to the Solicitation, extending the submission date for initial proposals to July 27, 2022.  AR 324, 1074.  Final proposal revisions were due on January 18, 2023.  AR 324.  ELBS, among other offerors, submitted a timely proposal.

ELBS is a joint venture comprised of E.L. Blake Corporation ("E.L. Blake"), a certified SDVOSB, and its SBA-approved mentor, Summit Technologies, Inc. ("Summit").  AR 518.  E.L. Blake and Summit entered into the JVOA on March 31, 2021, "for the sole purpose of forming an unpopulated joint venture . . . to compete for and perform, if awarded, contracts issued by federal agencies" that are set aside for SDVOSBs.  *Id.*  E.L. Blake is the Managing Member (or Managing Venturer), and Summit is the Partner Venturer of the joint venture.  AR 520.

On July 22, 2022, E.L. Blake and Summit supplemented their JVOA via an Addendum that incorporates project-specific provisions related to the Solicitation.  AR 547.  As relevant here, pursuant to 13 C.F.R. § 128.402(c)(7), the Addendum contains a description of the "Responsibilities of the Parties for the 1st Contract."  AR 549–51 (Section 7.0).  This section describes responsibilities with respect to the "Source of Labor" (Section 7.1), including a staffing

diagram; "Negotiating the 1st Contract" (Section 7.2); and "Performance of Work" (Section 7.3). *Id.* Specifically, Section 7.3.1 describes ELBS's limitation on subcontracting, percentages of work between the Managing and Partner Venturers, and agreement to hold regular meetings to ensure the parties satisfy performance requirements. AR 550. Section 7.3.2 describes the Managing Venturer's responsibility to provide executive oversight and management of the contract, as well as the Responsible Manager's duty of day-to-day management of the contract. AR 551. Sections 7.3.2.1 through 7.3.2.3 state that SSRs will perform the majority of the specific tasks under the contract and describe the division of major tasks and percentages of SSR work between the Managing and Partner Venturers, explain employee designation for task order managers, and identify the Partner Venturer's responsibilities for accounting functions and, if necessary, lending financial support for execution of the contract. *Id.*

### C.   Procedural Background

#### 1.   The First Award and SBA Protests

On March 23, 2023, the Air Force issued a pre-award notice identifying YKJY, LLC ("YKJY") as the successful offeror under the Solicitation. *VSBC Protests of: Beshenich Muir & Assoc., LLC & ELB Servs., LLC* (*BMA*), SBA No. VSBC-292, at *2 (July 19, 2023). On March 28 and 30, 2023, respectively, Beshenich Muir & Associates ("BMA") and ELBS each filed protests with OHA challenging YKJY's SDVOSB status. *Id.* at *2–3. Among other claims, BMA and ELBS asserted that YKJY was ineligible for award because YKJY's JVOA did not specify the responsibilities of the joint venture parties as they relate to source of labor and contract performance, per 13 C.F.R. § 125.18(b)(2)(vii).[2] *Id.* at *5. On July 19, 2023, OHA issued its

---

[2] The protests cited the regulation at its prior location, 13 C.F.R. § 125.18. On January 1, 2023, SBA moved the regulations in 13 C.F.R. § 125.18 to 13 C.F.R. § 128.402. *See* 87 Fed. Reg. 73,400, 73,412–13 (Nov. 29, 2022).

decision granting both protests. *Id.* at *17. OHA found that YKJY's JVOA "merely provides the percentages of work to be performed by each member," which is "insufficient" to meet the joint venture agreement requirements. *Id.* at *16.

       2.      <u>The Second Award and SBA Protests</u>

On August 31, 2023, the Air Force announced the award of the contract under the Solicitation to ELBS. AR 9. On September 7, 2023, Semper Valens Solutions Inc. ("Semper Valens") filed a size protest with the Area Office challenging ELBS's small business eligibility for the Solicitation. AR 1096. On September 29, 2023, the Area Office issued its Size Determination denying all of Semper Valens's allegations and holding that ELBS is an eligible small business joint venture for the Solicitation. AR 1109. Specifically, the Area Office found that ELBS's Addendum satisfies the requirement in 13 C.F.R. § 125.8(b)(2)(vii) to contain a "general description of the anticipated responsibilities with regard to negotiation of the contract, source of labor, and contract performance." AR 1104–05.

Concurrent with Semper Valens's size protest, BMA and Resilient Innovations, LLC ("RI") each filed status protests with OHA, challenging ELBS's SDVOSB status and eligibility for the Solicitation. AR 1257. On September 18, 2023, ELBS filed a Motion to Dismiss BMA's and RI's status protests. AR 339, 349. ELBS argued that the allegations were "speculative" and "fail[ed] to satisfy the pleading requirements for an SDVOSB status protest." AR 344–45. On October 27, 2023, OHA denied ELBS's Motion to Dismiss, finding that "[t]he protestors . . . raised specific allegations supported by credible evidence . . . ." AR 388–89. Upon denial of the motion, OHA ordered ELBS to submit the full case file, including its proposal in response to the Solicitation, as well as its JVOA and Addendum. AR 389.

On November 28, 2023, BMA and RI submitted supplemental protests based upon the information in ELBS's case file, arguing, among other claims, that ELBS's JVOA does not comply with 13 C.F.R. § 128.402(c)(7).  *See* AR 1262–65.  As relevant here, BMA's supplemental protest claimed that ELBS's Addendum does not contain enough detail about the parties' responsibilities and that "OHA's precedent requires specificity, not generalities or percentages."  AR 1264.  On March 26, 2024, OHA issued its Status Determination.  *See* AR 1257–75.  OHA denied all of RI's protest grounds and all of BMA's initial protest grounds.  AR 1272–73.  However, OHA sustained one of BMA's supplemental protest grounds challenging ELBS's compliance with § 128.402(c)(7).  AR 1275.  OHA held that ELBS is not an eligible SDVOSB for the contract award at issue based upon the Addendum's insufficient description of the venturers' specific responsibilities with respect to contract performance.  AR 1274–75.  In its decision, OHA provided the following explanation for its holding:

> 13 C.F.R. § 128.402(c)(7) clearly requires that there be specific provisions [in a joint venture agreement] with regard to negotiation of labor and contract performance, and if the contract is indefinite in nature, there must be a general description of the anticipated responsibilities of the parties.  ELB argues that the Addendum at § 7 complies with the regulation.  However, the Addendum does not lay out the specific responsibilities of the venturers as to contract performance.  It does state that Managing Venturer will provide [. . .]% of System Support Representative (SSR) work and the Partner Venturer will perform [. . .]% of the SSR work.  Nevertheless, OHA has held that merely laying out the percentages of work to be performed by each party is not sufficient.

AR 1274 (citations omitted).  OHA listed sections of the PWS that specify various performance requirements and concluded:

> It is evident that a wide variety of tasks are identified, not all to be performed by SSRs, and yet, ELB's JVA mentions none of them, and makes no effort to identify which categories of work are to be performed by which venturer.  While the specific tasks cannot be known, these categories of work are, and the Addendum could have addressed how these categories of work would be divided between the venturers. It did not do so.

*Id.*

      3.    <u>The Present Protest</u>

On April 8, 2024, ELBS filed its Complaint in the present suit challenging OHA's decision. The Complaint sets forth six counts: Count 1, "OHA's failure to dismiss the status protests was arbitrary, capricious, and contrary to regulation," ECF No. 1 at 22; Count 2, "OHA irrationally contradicted the Size Determination," *id.* at 26; Count 3, "The Decision involved a violation of regulation because OHA did not correctly apply or interpret 13 CFR § 128.402(c)(7)," *id.* at 32; Count 4, "OHA did not provide a reasoned explanation in accordance with the material facts in the record," *id.* at 40; Count 5, "OHA's reliance on its prior decisions was irrational," *id.* at 45; and Count 6, "OHA's analysis of the addendum's compliance with 13 CFR § 128.402(c)(7) was too narrow and did not consider the underlying intent of the regulation," *id.* at 50.  Pursuant to the Court's scheduling order, the parties briefed cross-motions for judgment on the administrative record.  *See* Pl.'s Mot. for J. on Admin. R., ECF No. 19; Pl.'s Mem. in Supp. of Pl.'s Mot. for J. on Admin. R., ECF No. 19-1; Def.'s Cross-Mot. for J. on Admin. R., ECF No. 21; Pl.'s Reply and Resp., ECF No. 23; Def.'s Reply, ECF No. 25.  Also before the Court is Plaintiff's Motion to Complete, Or In the Alternative, to Supplement the Administrative Record.  *See* ECF No. 20; Def.'s Resp. to Pl.'s Mot. to Complete or Suppl. Admin. R., ECF No. 22; Pl.'s Reply, ECF No. 24.  On June 7, 2024, the Court held oral argument on the motions.  *See* Minute Entry (June 7, 2024).  The motions are now ready for decision.

## II.  LEGAL STANDARDS

**A.  Motions to Complete or Supplement the Administrative Record**

Different standards govern motions to complete and motions to supplement the administrative record.  The standard for completing the record is less stringent than that of

supplementing the record. *See Linc Gov't Servs., LLC v. United States*, 95 Fed. Cl. 155, 159 (2010). "Ordinarily, the government's designation of an administrative record is entitled to a presumption of completeness; however, courts have recognized that this can be rebutted by clear evidence to the contrary." *Poplar Point RBBR, LLC v. United States*, 145 Fed. Cl. 489, 494 (2019). A motion to complete the administrative record is appropriate when a plaintiff seeks to add "information that was generated and considered by the agency" during the procurement but was omitted from the record filed with the court. *Smith v. United States*, 114 Fed. Cl. 691, 695 (2014), *aff'd*, 611 F. App'x 1000 (Fed. Cir. 2015). The Rules of the United States Court of Federal Claims ("RCFC") list "core documents" that "qualify for inclusion in the administrative record." *Poplar Point*, 145 Fed. Cl. at 494; RCFC App. C § VII, ¶ 22.

By comparison, parties in bid protest cases have a "limited" ability to supplement the record with extra-record materials. *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1379 (Fed. Cir. 2009). This is because "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Id.* (quoting *Camp v. Pitts*, 411 U.S. 138, 142 (1973)). Thus, an administrative record "should be supplemented only if the existing record is insufficient to permit meaningful review consistent with the [Administrative Procedure Act ("APA")]." *Id.* at 1381. Courts have found supplementation appropriate under this standard where the supplemental material is "necessary to help explain an agency's decision . . . particularly when a subjective value judgment has been made but not explained," *Orion Int'l Techs. v. United States*, 60 Fed. Cl. 338, 343 (2004) (citing *Camp*, 411 U.S. at 142–43); helps explain what the contracting officer reviewed and considered in reaching his or her decision, *Precision Standard, Inc. v. United States*, 69 Fed. Cl. 738, 747 (2006), *aff'd*, 228 F. App'x 980 (Fed. Cir. 2007); or "correct[s] mistakes and fill[s] gaps" in the

administrative record, *Pinnacle Sols., Inc. v. United States*, 137 Fed. Cl. 118, 131 (2018) (citing *Axiom*, 564 F.3d at 1379–81).

### B.      Motions for Judgment on the Administrative Record

Rule 52.1(c) governs motions for judgment on the administrative record.  Such motions are "properly understood as . . . an expedited trial on the record."  *Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005).  In contrast to the standard for summary judgment, "the standard for judgment on the administrative record is narrower" and involves determining, "given all the disputed and undisputed facts in the administrative record, whether the plaintiff has met the burden of proof to show that the [challenged action or] decision was not in accordance with the law."  *Martinez v. United States*, 77 Fed. Cl. 318, 324 (2007) (citing *Bannum*, 404 F.3d at 1357).  Therefore, a genuine issue of disputed fact does not prevent the Court from granting a motion for judgment on the administrative record.  *See Bannum*, 404 F.3d at 1357.

The Court of Federal Claims evaluates bid protests under the APA standard for review of agency action.  28 U.S.C. § 1491(b)(4); *Bannum*, 404 F.3d at 1351.  Under that standard, "an agency procurement action may be set aside only if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.'"  *Savantage Fin. Servs., Inc. v. United States*, 150 Fed. Cl. 307, 317 (2020) (quoting 28 U.S.C. § 1491(b)(4)).  An agency decision is arbitrary and capricious when it "'entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or the decision is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'"  *Ala. Aircraft Indus. v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

In conducting an arbitrary-and-capricious review, a court may not substitute its judgment for that of the agency. Even if the Court may have reached a different conclusion, it should not disturb the agency's decision "so long as there is a reasonable basis for it." *Savantage Fin. Servs.*, 150 Fed. Cl. at 317 (citing *Honeywell, Inc. v. United States*, 870 F.2d 644, 648 (Fed. Cir. 1989)). Accordingly, the Court's review of an agency procurement decision is "highly deferential." *Advanced Data Concepts v. United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000).

Decisions made by OHA are given further "special deference" where the SBA's expertise and familiarity with administrative rules and intricacies are at issue. *Obsidian Sols. Grp., LLC v. United States*, 153 Fed. Cl. 334, 341–42 (2021); *Eagle Design & Mgmt., Inc. v. United States*, 57 Fed. Cl. 271, 273 (2002). Special deference is therefore warranted when OHA has been asked to interpret SBA rules "in an intricate manner that a nonexpert court must be careful not to disrupt." *Darton Innovative Techs., Inc. v. United States*, 153 Fed. Cl. 440, 451 (2021). However, the Court of Federal Claims does not afford deference on questions of law. *See VS2, LLC v. United States*, 155 Fed. Cl. 738, 767 (2021).

## C.    Standing in a Bid Protest

To establish standing in a bid protest, the plaintiff is required to demonstrate that it is an interested party, meaning it "is an actual or prospective bidder[ ] and . . . possesses the requisite direct economic interest." *Rex Serv. Corp. v. United States*, 448 F.3d 1305, 1307 (Fed. Cir. 2006). To show a "direct economic interest," the plaintiff must show that it was prejudiced by the Government's alleged errors by proving it had a "substantial chance" of receiving the contract. *Myers Investigative & Sec. Servs., Inc. v. United States*, 275 F.3d 1366, 1370 (Fed. Cir. 2002). Put differently, a plaintiff has standing to pursue a bid protest if it demonstrates that "but for the error[s]" challenged in the protest it "would have had a substantial chance of securing" the contract

at issue.  *Labatt Food Serv., Inc. v. United States*, 577 F.3d 1375, 1378 (Fed. Cir. 2009); *see Alfa Laval*, 175 F.3d at 1367.  As the United States Court of Appeals for the Federal Circuit recently held, § 1491(b)(1)'s interested party requirement presents a question of statutory standing that does not implicate this Court's subject-matter jurisdiction.  *CACI, Inc.-Federal v. United States*, 67 F.4th 1145, 1151 (Fed. Cir. 2023).  Here, the parties do not dispute ELBS's standing to bring the instant protest.

### III.  DISCUSSION

Plaintiff's Motion to Complete, Or In the Alternative, Supplement the Administrative Record is denied because the record of the Area Office size protest was not reviewed by OHA in the status protests and ELBS has not demonstrated how supplementing the record is necessary for meaningful judicial review.  As to ELBS's Motion for Judgment on the Administrative Record and the Government's Cross-Motion, the Court finds no error in OHA's application of the pleading and dismissal standards and defers to its factual finding in denying ELBS's Motion to Dismiss.  It likewise finds that OHA was not bound by the Area Office's Size Determination.  However, the Court holds that OHA's application of 13 C.F.R. § 128.402(c)(7) is contrary to the regulation's plain language.  The Court thus vacates and remands this matter to OHA to reconsider its decision consistent with this opinion.

### A.    The Administrative Record Is Not Incomplete, Nor Is Supplementation Warranted.

The Court first reviews ELBS's Motion to Complete, Or In the Alternative, Supplement the Administrative Record with the full record of the Area Office's Size Determination.  *See* ECF

No. 20.  While there are some circumstances under which this Court may complete or supplement an administrative record, none of them exist here.

ELBS argues the administrative record is not complete without the full record of the size protest before the Area Office that held in ELBS's favor because it is a "core document" relevant to the present bid protest.  *Id.* at 4.  To guide an agency in compiling an administrative record, the Court's rules provide a non-exhaustive list of "core documents relevant to a protest" that the agency "may include, as appropriate."  RCFC App. C § VII, ¶ 22.  This list includes "the record of any previous administrative or judicial proceedings relating to the procurement, including the record of any other protest of the procurement."  *Id.* ¶ 22(u).  ELBS asserts that the size protest record "falls squarely within [the] definition" of a record of a previous administrative proceeding because the Area Office reviewed the same JVOA and Addendum for its Size Determination in the same procurement as did OHA in its Status Determination.  ECF No. 20 at 4–5.  Thus, according to ELBS, the full record of the size protest "*presumptively qualifies* for inclusion in the administrative record."  *Id.* at 5 (emphasis added).

The inclusion of documents in a prior protest "is not an automatic [guarantee] that the same documents will be added to the administrative record [in a protest] before the Court."  *Allied Tech. Grp., Inc. v. United States*, 92 Fed. Cl. 226, 230–31 (2010).  The core documents section of the Court's bid protest rules "employs the words 'may' and 'as appropriate,' leaving it to the Court's reasoned discretion to determine when materials should be added to the administrative record."  *Id.* at 230; *see also* RCFC App. C § VII, ¶ 22.  Here, ELBS could have introduced the size protest record in the status protests, but it failed to do so.  In its denial of OHA's Motion to Dismiss, OHA ordered ELBS to submit "additional evidence it believes OHA should consider" by November 13, 2023.  AR 389.  OHA advised that "supplemental evidence not filed by this date will be deemed

14

waived." *Id.* In response, ELBS submitted only the Area Office' final decision from the size protest, not the full record. *See* AR 1096–1109. Given that OHA did not consider the full size protest record in rendering its decision, the Court finds that the administrative record is not incomplete without it.

ELBS alternatively seeks to supplement the administrative record with the full size protest record. ECF No. 20 at 6–7. As the Federal Circuit explained in *Axiom*, the administrative record "should be supplemented only if the existing record is insufficient to permit meaningful review consistent with the APA." 564 F.3d at 1381. "The party seeking to supplement the administrative record bears the burden of demonstrating why the existing record is insufficient." *Harkcon, Inc. v. United States*, 132 Fed. Cl. 697, 701 (2017). The Court is not convinced that, here, the size protest record is required for effective judicial review.

ELBS argues that the full record is "germane" to the Court's review of this protest. ECF No. 20 at 7; *Axiom*, 564 F.3d at 1381. According to ELBS, the size protest record provides "the full administrative proceeding that SBA engaged in to confirm ELBS's eligibility as a joint venture for the Solicitation," and it demonstrates why OHA's decision contravened the APA. *Id.* However, ELBS also concedes that the Court "already has access to certain key documents" in the size protest, most notably the Size Determination. *Id.* at 6. Having the full record, ELBS contends, "would confirm" what the Court already knows—that the Area Office and OHA both reviewed the same JVOA and Addendum under the same standard from similar regulations, yet under different protest grounds. *Id.*

Although it is possible that the full size protest record might be "germane" to the present protest, this is not the standard for supplementation. *Id.* at 7. Rather, the Court can effectively review OHA's Status Determination without reviewing any additional records from the size

protest.  Accordingly, Plaintiff's Motion to Complete, Or In the Alternative, to Supplement the Administrative Record is denied.

**B.      Plaintiff's Motion and the Government's Cross-Motion for Judgment on the Administrative Record.**

Proceeding to the grounds raised in the parties' dispositive motions, the Court finds no reason to disturb OHA's denial of ELBS's Motion to Dismiss the status protests.  In addition, the Court finds that OHA was not bound by the Area Office's prior Size Determination finding that ELBS has a compliant JVOA.  However, OHA's Status Determination cannot be sustained under the familiar APA standard of review, and thus vacatur and remand are appropriate.

**1.      OHA's Denial of ELBS's Motion to Dismiss Was Proper.**

ELBS argues that the status protests lacked credible supporting evidence, and thus OHA failed to follow its regulation setting forth the standard for denying a motion to dismiss.  *See* ECF No. 19-1 at 16.  The Court agrees with the Government that OHA's denial decision was not arbitrary, capricious, or contrary to SBA's regulations.  *See* ECF No. 21 at 28–29; ECF No. 25 at 23.

Upon award of the contract to ELBS, BMA and RI challenged ELBS's SDVOSB status eligibility before OHA for failure to meet the requirements of 13 C.F.R. § 128.402.  *See* AR 329, 341.  ELBS argues that OHA's denial of its Motion to Dismiss was improper because the status protestors "clearly did not satisfy the regulatory pleading requirement."  ECF No. 19-1 at 16.  It contends that both BMA's and RI's protests contained only "barebones allegations," *id.* at 17, that were "devoid" of "support[] by 'credible' evidence," *id.* at 18.  According to ELBS, BMA "merely raised a hypothetical" in its protest, "speculating" that ELBS's JVOA does not meet SBA's

regulatory requirements.  *Id.* at 16; *see id.* at 17.  And RI "merely offered its 'belief'" that ELBS

is not an eligible SDVOSB due to the absence of profiles in two SBA databases.  *Id.* at 17.

Although ELBS alleges that OHA's denial decision effectively permitted BMA and RI to

go on a "fishing expedition" once ELBS produced the full case file, *id.*, OHA's decision was not

arbitrary or capricious, nor contrary to SBA's regulations.  That BMA was ultimately successful,

not on its initial protest grounds, but on one of its supplemental protest grounds after having

reviewed the full case file does not retroactively make OHA's denial improper.  In its Order of

Dismissal, OHA determined that:

> Having considered the arguments raised by ELB and opposing responses made by
> the Protestors, I DENY ELB's Motion to Dismiss.  The protestors have raised
> specific allegations supported by credible evidence, which cannot be dismissed or
> supported at this early stage of the proceedings, without the examination of the
> pertinent records at hand.

AR 388–89.  OHA's determination is supported by the record.  Indeed, at least with respect to

BMA's protest, the protest letter set forth in numerous pages the specific reasons that BMA

contended ELBS's JVOA does not comply with the regulations, and it included approximately 140

pages of supporting documents.  *See* AR 5–7, 8–148.

The Court sees nothing arbitrary or capricious about OHA's findings as to the specificity

of the allegations and the credibility of the evidence submitted at the pleading stage, or its

conclusion that the protests were sufficient to survive dismissal.  AR 388.  ELBS's mere

disagreement is not enough to overcome the deference OHA's findings are due.  *See LS3, LLC v.

United States*, 168 Fed. Cl. 722, 731 (2023) ("If OHA has acted rationally, the Court must defer

to OHA's decision.").  ELBS's "attempt at a heightened standard of 'credible evidence,'" where

only "specific facts or allegations" are required to maintain a status protest, likewise fails.  ECF

No. 25 at 24.  According to 13 C.F.R. § 134.1005(a)(2), a protest "is insufficient" if it is made

"without setting forth specific facts or allegations."  13 C.F.R. § 134.1005(a)(2); *see also* 13 C.F.R. § 134.1007(b).  And when OHA finds a protest to be "nonspecific," § 134.1005(a)(2) directs dismissal.  OHA appropriately followed that standard in ELBS's case.  Therefore, the Court will not disturb OHA's denial of ELBS's Motion to Dismiss the status protests.

      2.    <u>OHA Was Not Bound by the Area Office's Size Determination.</u>

ELBS argues that OHA's Status Determination was arbitrary and capricious because it did not treat as conclusive the Area Office's Size Determination, specifically its finding with respect to the sufficiency of ELBS's JVOA.  Indeed, ELBS contends that OHA was "collaterally estopped from reconsidering or overturning the Size Determination" of the Area Office, ECF No. 19-1 at 21, because the Area Office found that "the same JVOA met the same regulatory requirements" challenged under the status protests, *id.* at 20.  The Court rejects ELBS's arguments because it cannot satisfy the conditions of collateral estoppel and has not otherwise shown that OHA was bound by the earlier Size Determination.

Collateral estoppel applies where (1) the issue previously adjudicated is identical to the present issue, (2) that issue was "actually litigated" in the prior case, (3) the prior adjudication on the issue was necessary to the final decision in the prior case, and (4) the party precluded had a "full and fair opportunity to litigate the issue" in the prior case.  *Laguna Hermosa Corp. v. United States*, 671 F.3d 1284, 1288 (Fed. Cir. 2012).  The doctrine operates to prevent parties who have already had their day in court from re-litigating the same claims and issues.  *See Comair Rotron, Inc. v. Nippon Densan Corp.*, 49 F.3d 1535, 1537 (Fed. Cir. 1995).  Importantly, the doctrine applies to *litigants* asserting claims and arguments, not to *administrative bodies or courts* that are tasked with resolving claims and arguments.

Collateral estoppel clearly does not apply here.  Even though both protests involved the review of the same JVOA in the same procurement and a challenge under regulations that mirror each other, the issues in the size and status protests were not identical.  *See supra* § I.A.  Rather, the size and status proceedings each involved "separate and distinct protest grounds with separate procedures."  ECF No. 21 at 30.  In addition, the protestors in each proceeding were different.  Semper Valens filed the size protest with the Area Office, while BMA and RI each filed a status protest with OHA.  AR 1096, 1257.  Nonetheless, ELBS attempts to argue that the agency, SBA, "effectively becam[e] a party to the case" once SBA performed the size review and determined whether ELBS's JVOA is compliant.  ECF No. 19-1 at 22.  But the Area Office and OHA were *decision-makers* in, not parties to, these protests.  The Court agrees that "SBA being the decision maker in both cases does not create a privity of parties."  ECF No. 21 at 31.  Therefore, collateral estoppel does not apply.

ELBS's argument that OHA was bound by the Area Office's Size Determination as the "final agency action" on behalf of SBA, likewise fails.  ECF No. 19-1 at 19.  SBA's regulations acknowledge the possibility of concurrent size and status protests: "If a protester protests both the size of a VOSB or SDVOSB and the concern's eligibility . . . , SBA will process each protest concurrently, under the procedures set forth in part 121 of this chapter and this part."  13 C.F.R. § 134.1001(c).  OHA may, of course, review size determinations upon timely appeal.  *Id.* § 121.1101(a).  If a size determination is not appealed, it is considered final and binding *on the parties*.  *Id.*; *see id.* § 121.403.  Whether it is acting as an appellate body reviewing a size determination or providing first-level review in a status protest, OHA is not bound by decisions or findings of an area office.  ELBS has cited no regulation or other authority that states otherwise.

    3.    <u>OHA Misapplied 13 C.F.R. § 128.402(c)(7) and Failed to Address Relevant Evidence in its Decision.</u>

At the center of this dispute is ELBS's contention that OHA's decision was arbitrary, capricious, and contrary to law because it did not correctly interpret or apply 13 C.F.R. § 128.402(c)(7) in reviewing ELBS's JVOA and Addendum.  ELBS argues that OHA required a specific description of contract performance responsibilities when only a general one is required by the regulation.  ECF No. 19-1 at 27.  In response, the Government asserts that OHA correctly applied § 128.402(c)(7) by requiring a more specific description from ELBS because the Solicitation's scope of work was known and, in fact, described in detail in the PWS.  ECF No. 21 at 19–20.  After careful review, the Court concludes that OHA's application was contrary to the plain language of the provision.

As noted above, SBA regulations require joint ventures to include 12 specific categories of information in their joint venture agreements when bidding on a VOSB or SDVOSB set-aside contract.  *See* 13 C.F.R. § 128.402(c).  At issue here is the requirement to describe the "responsibilities of the [joint venture] parties with regard to negotiation of the contract, source of labor, and contract performance."  *Id.* § 128.402(c)(7).  Section 128.402(c)(7) requires a joint venture agreement to contain information "*[s]pecifying the responsibilities* of the parties with regard to negotiation of the contract, source of labor, and contract performance[.]"  *Id.* (emphasis added).  However, "[i]f a contract is indefinite in nature, such as an indefinite quantity contract or a multiple award contract where the level of effort or scope of work is not known, the joint venture must provide a *general description of the anticipated responsibilities* of the parties with regard to negotiation of the contract, source of labor, and contract performance[.]"  *Id.* (emphasis added).

As at least one OHA decision has recognized, the second sentence of the provision pertaining to indefinite contracts is "more lenient as to the level of detail expected within the JVA."  *Size Appeal of: Eagle Hill Home Med. Corp.*, SBA No. SIZ-6163, at *15 (Aug. 9, 2022).  To

determine whether an agreement meets that more lenient standard, some OHA decisions have first looked to the solicitation to determine what is known or unknown about the indefinite contract's anticipated level of effort and scope of work.  In *Size Appeal of: Spinnaker Joint Venture, LLC*, OHA found that the solicitation for the IDIQ contract at issue lacked substantive information and thus the joint venture agreement provided "about as much detail as could be provided."  SBA No. SIZ-5964, at *12 (Oct. 11, 2018).  Considering that the solicitation contained "no detail on exactly what type of work will be required," OHA determined that the agreement complied with § 128.402(c)(7) because it "provide[d] that each member [would] perform with employees from its respective organization[,] . . . list[ed] the general types of tasks each member [would] perform[,] . . . [and] acknowledge[d] the indefiniteness of the RFP."  *Id.*  OHA applied the same test in *CVE Protest of: KTS Solutions, Inc.*, SBA No. CVE-146, at *11 (Feb. 20, 2020); *BMA*, SBA No. VSBC-292, at *16; and *VSBC Protest of: Thunderyard Liberty JV II, LLC*, SBA No. VSBC-264, at *12 (Jan. 25, 2024).

Considering the parties assert differing interpretations of § 128.402(c)(7), the Court first looks, as it must, to the plain language of the regulation.  *See Banknote Corp. of Am. v. United States*, 365 F.3d 1345, 1353 (Fed. Cir. 2004) ("We begin with the plain language of the document."); *see also Jimenez v. Quarterman*, 555 U.S. 113, 118 (2009) ("It is well established that, when the statutory language is plain, we must enforce it according to its terms.") (citations omitted)); *Def. Integrated Sols., LLC v. United States*, 165 Fed. Cl. 352, 368 (2023) ("Regulatory interpretation uses a similar analytical framework as is applied to statutory interpretation . . . ." (alteration omitted)).

Section 128.402(c)(7), which consists of two sentences, instructs joint ventures to provide information about the responsibilities of each joint venture party as they relate to the contract on

which it is bidding.  The first sentence states the main requirement that a joint venture agreement "[s]pecify[] the responsibilities of the parties with regard to negotiation of the contract, source of labor, and contract performance . . . ."  13 C.F.R. § 128.402(c)(7).  The second sentence provides an alternative, more lenient standard where the contract at issue is "indefinite in nature."  *Id.*; *see Eagle Home Med. Corp.*, SBA No. SIZ-6163, at \*10.  Under this more lenient standard, the joint venture agreement must provide "a general description of the anticipated responsibilities of the parties with regard to negotiation of the contract, source of labor, and contract performance . . . ."  13 C.F.R. § 128.402(c)(7).  Read together, the sentences in this provision set up an either/or framework for the level of specificity required of a joint venture agreement—*i.e.*, either sentence one applies or, if the contract is indefinite, sentence two applies.

As relevant here, the second sentence of § 128.402(c)(7) applies broadly to contracts that are "indefinite in nature."  *Id.*  It then gives two examples of indefinite contracts.  The first example is "an indefinite quantity contract," and the second example is "a multiple award contract where the level of effort or scope of work is not known."  *Id.*  Contrary to the Government's contention (ECF No. 21 at 19), based upon its placement in the provision's text, the phrase "level of effort or scope of work" does not also qualify the term "indefinite quantity contract" in the first example, nor the preceding phrase referring generally to a contract that is "indefinite in nature."  Typically, under the principles of statutory construction, "'when there is a straightforward, parallel construction that involves all nouns or verbs in a series,' a modifier at the end of the list 'normally applies to the entire series.'"  *Facebook, Inc. v. Duguid*, 592 U.S. 395, 402–03 (2021) (quoting A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 147 (2012) (Scalia & Garner)) (applying the series-qualifier canon).  But with postpositive modifiers, an exception applies if a determiner (*e.g.*, a, the, some) is inserted before the second item in the series.  *See Mintun v.*

*Equifax Info. Servs., LLC*, 535 F. Supp. 3d 988, 994 (D. Nev. 2021) (citing Scalia & Garner 148–49) (explaining the determiner exception to the series-qualifier canon).  As is the case here, the determiner (*a* multiple award contract) stops the modifier (where the level of effort or scope of work is not known) from reaching back to the first item in the series (an indefinite quantity contract).  *See id.*  Not only is that the most natural reading of the second sentence in § 128.402(c)(7), but it also makes the most sense in context.  As the Government explained at oral argument, an IDIQ may be a multiple award contract but a multiple award contract is not always an IDIQ, *see* Oral Arg. Tr. at 40:7–41:8, and thus additional language is necessary to identify when a multiple award contract is subject to the standard set forth in the second sentence.

Thus, when applying § 128.402(c)(7) to a joint venture agreement, OHA should first ask if the contract at issue is indefinite in nature, and if so, then it should determine under the more lenient standard of the second sentence whether the joint venture agreement provides a general description of anticipated responsibilities for (1) negotiation of the contract, (2) source of labor, and (3) contract performance.  Approaching the application of § 128.402(c)(7) by looking at whether the contract is indefinite in nature *and* whether the level of effort/scope of work is known or unknown does not comport with the plain meaning of the text because it improperly creates an extra prerequisite to applying the standard under sentence two of the provision.  In short, if the solicitation is for an IDIQ contract, the second sentence of the provision applies.  That some information about an IDIQ contract's scope of work is known does not foreclose application of the general-description standard nor require application of the specific-responsibility requirement in the first sentence.

In the matter protested here, OHA incorrectly applied § 128.402(c)(7) in reviewing ELBS's JVOA and Addendum.  AR 1274–75.  In its decision, OHA acknowledged that the status protests

pertained to a solicitation for an IDIQ contract.  AR 1258; *see also BMA*, SBA No. VSBC-292, at *16 (finding in same procurement that "the IDIQ solicitation is indefinite").  OHA also acknowledged the more lenient standard applicable to IDIQ solicitations, explaining that "if the contract is indefinite in nature, there must be a general description of the anticipated responsibilities of the parties" in the joint venture agreement.  AR 1274.  OHA proceeded, however, to fault ELBS for "not lay[ing] out the *specific* responsibilities of the venturers as to contract performance."  AR 1274 (emphasis added).  It found that ELBS's Addendum "does not address the various types of tasks identified in the PWS," noting that "[w]hile the specific tasks cannot be known, these categories of work are, and the Addendum *could have* addressed how these categories of work would be divided between the venturers."  *Id.* (emphasis added).  As explained above, for an IDIQ solicitation, the level of detail known about the scope of work does not determine the standard OHA should apply.   Only a "general description of anticipated responsibilities" was required.  13 C.F.R. § 128.402(c)(7).

Moreover, in finding ELBS's Addendum non-compliant, OHA relied upon SBA cases that are distinguishable from the present dispute.  AR 1275 (citing *Patriot Strategies* and *KTS Solutions*).[3]  In *Patriot Strategies*, OHA held that the joint venture agreement "was deficient when it failed to 'provide any indication of the tasks which each member would perform' and failed to identify which employees of each member would perform which functions . . . ."  *Id.* (citing *CVE Protest of: Patriot Strategies, LLC*, SBA No. CVE-243, at *9 (Oct. 5, 2022)).  However, the solicitation in *Patriot Strategies* did not concern an indefinite contract.  *Patriot Strategies*, SBA No. CVE-243, at *1, 2 (contract for work associated with elevators at a Veterans Affairs Medical Center in Virginia).  OHA also found the joint venture agreement at issue in *KTS Solutions* to be

---

[3] OHA also relied on *BMA*, which is discussed further below.

deficient because it "failed to delineate the roles each venturer would perform in contract performance." AR 1275 (citing *KTS Sols.*, SBA No. CVE-146). Unlike here, the joint venture in *KTS Solutions* did not submit an addendum to its joint venture agreement that was contract-specific, and the agreement pre-dated the release of the solicitation. *KTS Sols.*, SBA No. CVE-146, at *5, 11; *see id.* at *10 (noting that joint venture agreements prepared prior to the issuance of a solicitation and not updated with an addendum "often cannot meet the requirements of the regulation").

Plaintiff argues, and the Court agrees, that OHA should have considered the decision in *Thunderyard*, which applied the more lenient standard in § 128.402(c)(7) to an IDIQ contract. *Thunderyard*, SBA No. VSBC-264, at *12. *Thunderyard* involved a solicitation for an information technology services contract with a PWS that contained categories of tasks similar to the way the present PWS provides categories. *Id.* at *1; *see* ECF No. 19-1 at 38–39. Even so, OHA did not require a description of specific responsibilities for each PWS category in the joint venture agreement at issue. *See Thunderyard*, SBA No. VSBC-264, at *12. Rather, it found that the agreement sufficiently provided "general tasks the Managing Member and Partner Member will perform, as well as divide[d] the workshare by percentages." *Id.* ELBS points out that its JVOA "go[es] much further in generally describing the joint venturers' anticipated responsibilities for contract performance" than the agreement in *Thunderyard*. ECF No. 19-1 at 39; *compare* AR 550–51, *with Thunderyard*, SBA No. VSBC-264, at *8, 9 (listing the general division of partner responsibilities including percentages of work, accounting responsibilities, and supply of labor).

Finally, OHA failed to address relevant evidence in the record. *See LS3*, 168 Fed. Cl. at 731 (citing *Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281, 285 (1974); *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168) (1962)). Ultimately, OHA found

that ELBS's Addendum "merely lay[s] out the percentages of work to be performed by each party," which "is not sufficient."  AR 1274.  But OHA did not address other information in ELBS's Addendum, such as the divisions of responsibilities under the second part of the Performance of Work section (Section 7.3.2) and the staffing diagram providing job titles and employee names for the Program Management Office (PMO), Mission Planning System Support Facility (MPSSF), and SSR functions (Section 7.1).  AR 550–51; *see* ECF No. 19-1 at 33–36.  The inclusion of this information arguably distinguishes ELBS's Addendum from the joint venture agreement in *BMA*.  There, OHA found that the agreement "gave percentages of work to be performed by each member, and except for the responsibilities of the Responsible Manager, failed to provide any indication of which tasks the members of the joint venture would perform, nor which employees would perform them."  AR 1275; *BMA*, SBA No. VSBC-292, at *16.  Although ELBS does not provide a "PWS section-by-section breakdown" in its Addendum, it objectively provides some information on the responsibilities for contract performance other than just percentages of work.  ECF No. 19-1 at 31.

Accordingly, the Court holds that OHA committed legal error by applying 13 C.F.R. § 128.402(c)(7) contrary to the plain language of that regulation.  Because the Solicitation pertains to an IDIQ contract, which is indefinite in nature, OHA should have applied the more lenient standard in the second sentence of the provision.  Additionally, OHA's decision was arbitrary and capricious because it failed to address relevant evidence with respect to the sufficiency of ELBS's JVOA.  Therefore, the Court denies the Government's Cross-Motion and grants Plaintiff's Motion for Judgment on the Administrative Record on this issue.

## C.    Vacatur and Remand to OHA Is the Appropriate Remedy.

As relief, ELBS requests a permanent injunction, vacating OHA's decision and enjoining the Air Force from excluding ELBS from contract award.  ECF No. 1 at 57; *see* ECF No. 19-1 at

42.  The Government represents that, if ELBS is successful on the merits, it does not contest the remaining injunctive relief factors.  ECF No. 21 at 34.  It notes, however, that given SBA's authority to assess compliance with the SDVOSB eligibility standards, a remand would be the appropriate to remedy any prejudicial errors in OHA's Status Determination.  *Id.*  The Court agrees.

The Court acknowledges that OHA has expertise to apply the requirements of SBA regulations to review the sufficiency of joint venture agreements vis-à-vis SDVOSB eligibility.  *See Darton Innovative Techs.*, 153 Fed. Cl.at 451 ("'special deference' is paid to decisions by the OHA due to the SBA's 'quasi-technical administrative expertise'") (quoting *Eagle Design & Mgmt.*, 57 Fed. Cl. at 273)).  Although the Court holds that OHA misapplied the standard in ELBS's Status Determination, it is for OHA to apply the appropriate standard to the relevant evidence in the record and articulate a rational basis for its decision in the first instance.  *See E&L Constr. Grp., LLC v. United States*, 159 Fed. Cl. 115, 122 (2022).  Therefore, the Court remands this matter to OHA for reconsideration of the Status Determination consistent with this opinion.

## IV.   CONCLUSION

For the reasons set forth above, the Court **DENIES** Plaintiff's Motion to Complete, Or In the Alternative, to Supplement the Administrative Record (ECF No. 20).  The Court **DENIES IN PART** and **GRANTS IN PART** Plaintiff's Motion for Judgment on the Administrative Record (ECF No. 19) and **DENIES** the Government's Cross-Motion for Judgment on the Administrative Record (ECF No. 21).

Furthermore, pursuant to 28 U.S.C. § 1491(b)(2) and RCFC 52.2(a), this matter is **REMANDED** to SBA OHA on the issue of the proper application of 13 C.F.R. § 128.402(c)(7)

to ELBS's JVOA and Addendum, as explained above.  The Court provides the following directions to the parties on remand:

1) The duration of the remand is **90 days** from the date of this opinion, or until **October 1, 2024**.

2) The Clerk's office is directed to **STAY** this case until further order of the Court.

3) Pursuant to RCFC 52.2(b)(1)(D), the parties shall file a Joint Status Report on or before **August 15, 2024**, indicating the status of the proceedings on remand.

4) Pursuant to RCFC 52.2(e), the parties shall file a Joint Status Report within **30 days** after the conclusion of remand proceedings that sets forth the parties' positions regarding whether further litigation of this matter is necessary.  If further proceedings are appropriate, the parties shall include a proposed schedule to govern this case going forward.

The Clerk's office shall serve a copy of this order at:

U.S. Small Business Administration
Office of Hearings and Appeals
409 3rd Street, SW, Eighth Floor
Washington, DC 20416


**SO ORDERED**.


Dated: July 12, 2024                                         */s/ Kathryn C. Davis*
                                                              KATHRYN C. DAVIS
                                                              Judge